# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| SIDNEY McCRAY, | ) | |
| | ) | No. 10 C 463 |
| Petitioner, | ) | |
| | ) | Hon. Marvin E. Aspen |
| v. | ) | |
| | ) | |
| DONALD GAETZ, Warden | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM ORDER AND OPINION

Marvin E. Aspen, District Judge:

Petitioner Sidney McCray, a prisoner at Menard Correctional Center where he is in the custody of respondent Donald Gaetz, warden of the institution, now petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As set forth below, we deny McCray's petition.

## BACKGROUND

### I.      Summary

A grand jury indicted McCray and codefendants Timothy Stephens and Antonio Richardson for the home invasion, robbery, and first degree murder of Dwayne Hill. (Resp. Ex. A, *People v. McCray,* No. 1-04-1188 slip op. at 1 (Ill. App. 1st Dist. 2007)). McCray severed his trial from his codefendants, and a jury found him guilty on one count of each offense. (*Id.*) He was sentenced to forty-five years in prison for first degree murder and twenty years each for home invasion and armed robbery, to be served concurrently. (*Id.*) The facts underlying McCray's conviction are as follows.[1]

---

[1] The state court's account of the facts is presumed correct because it has not been rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata,* 449 U.S. 539, 547, 101 S. Ct. 764, 769–70 (1981).

## II.  McCray's Conviction

On October 29, 1998,  police found murder victim Dwayne Hill in an alley with multiple gunshot wounds to his face and shoulder.  (*Id.* at 3.)  His nearby apartment had been ransacked. (*Id.* at 4.)  During the course of their investigation, police interviewed several persons of interest, including Timothy Stephens, Antonio Richardson, and Rontral Lee.  (*Id.*)  On November 17, 1998, Stephens, Richardson, and Lee signed written statements implicating McCray in Hill's murder.  (*Id.* at 5, 7, 10.)  Stephens and Richardson plead guilty to home invasion and robbery of Hill.  (*Id.* at 7, 9.)

### A.  Arrest, Interrogation, and Confession

On January 8, 1999, police knocked on McCray's apartment door and called out "police." (*Id.* at 11.)  McCray attempted to run out the back door, but he retreated and hid under a pile of laundry once he saw police were guarding the rear of the apartment.  (*Id.*)  Detective Hartman transported McCray to the police station at 11:30 p.m., where he *Mirandized* and interrogated McCray.  (*Id.*)  At 3:30 a.m., McCray confessed to the murder.  (*Id.*)

The next morning Assistant State's Attorney ("ASA") Jennifer Coleman spoke with McCray.  (*Id.*)  According to Coleman's trial testimony, after she completed writing out and reading a summary of McCray's statement to him, he signed six of the statement's seven pages but stopped the interview once defense attorney Marvin Marshall arrived at the police station. (*Id.* at 12.)  Marshall testified that he waited forty minutes to speak with McCray and that he saw two individuals go into a room with McCray for thirty minutes before he could speak to him. (*Id.*)

**B.     Trial Testimony of Stephens, Richardson, and Lee**

At trial, Stephens and Richardson testified and denied having any involvement in or knowledge of the murder.  (*Id.* at 5, 7.)  However, the prosecution impeached both men's testimony with the written statements they separately made to police on November 17, 1998, implicating themselves and McCray in the murder of Hill.  (*Id.* at 5, 7–8.)  Stephens testified that he signed the written summary and initialed the backs of photos of McCray and Richardson, but he stated that he did this only because the police kept him in custody for two days and interrogated, threatened, and beat him.  (*Id.* at 5.)  Likewise, Richardson testified that he signed the statement that the police wrote for him without ever reading its contents because the police "made him" by keeping him in custody for four days without food or drink.  (*Id.* at 8.)  Richardson was only sixteen at the time of the offense, and he testified that he was not given access to a youth officer during the interrogation.  (*Id.*)  Both Stephens and Richardson testified that they pled guilty to home invasion and robbery but only because they feared that they would get a longer sentence if they went to trial.  (*Id.* at 7, 9.)

The state also submitted into evidence the signed statement of Rontral Lee.  Lee testified at trial, admitting that he signed the statement implicating McCray, but only because police threatened to charge him as a suspect, which would have violated his bond on an unrelated narcotics charge.  (*Id.* at 10.)  Lee was not involved in the murder, but his statement indicated that McCray told him on the night of the offense that McCray, Stephens, and Richardson were going to rob Hill.  (*Id.*)  Lee denied ever reading the statement, although he admitted signing it. (*Id.*)

The prosecution impeached Stephens' and Richardson's testimony with testimony from ASA David Williams, which contradicted their accusations of police misconduct.  (*Id.* at 6, 8.)

In addition, Williams stated that a youth officer was present during Richardson's interrogation and that police provided him with food and drink. (*Id.* at 8.)

### C. Trial Testimony of McCray

McCray testified on his own behalf. Although he admitted making confessions to Detective Hartman and ASA Coleman, he testified that he did so because Hartman told him that, as a result of Stevens' and Richardson's statements, he would only get a twenty-year sentence if he confessed, while he would go to jail for the rest of his life if he did not. (*Id.*) His statement said that on the night of the murder, McCray, Stephens, Richardson, and two other individuals went to Hill's apartment to rob Hill because they were angry that he had shorted McCray on a previous drug deal. (*Id.*) It then described the evening, culminating in McCray shooting Hill. (*Id.*)

Detective Hartman testified that he interviewed McCray five times, and that each time McCray altered his story of the events until he eventually admitted shooting Hill. (*Id.* at 14–15.) Hartman denied coaching McCray, yelling at him, slamming the door, telling him information about the cases, and threatening to send him away for the rest of his life or that he would get a twenty-year sentence. (*Id.* at 15–16.) He never showed McCray Stevens' and Richardson's statements, but he did testify that he told McCray that his stories did not match those that Stevens and Richardson gave detectives. (*Id.* at 15.) ASA Coleman testified that prior to signing the written statement, McCray waived his *Miranda* rights and told her that the detectives treated him well during the interrogation. (*Id.* at 11.)

### D.    Closing Arguments

During closing arguments, each side made arguments concerning Illinois Pattern

Instruction Criminal No. 3.11 concerning prior inconsistent statements.  (*Id.* at 17.)  During its

closing argument, the prosecution referenced the jury instruction and said:

> [W]hen [Antonio Richardson] goes on to say that he sees defendant shoot
> Dwayne Hill as he is looking through that walkway, it's just as if he had said it on
> the stand.  Because the law recognizes that when individuals are in a setting such
> as an interview room with just a State's attorney there and just a police officer
> there and they are not faced with that jury and they are not faced with that judge
> and they are not faced with that determination of guilt or innocence, they are
> more likely to tell what really happened.

(*Id.* at 17–18.)  The defense objected, and the judge responded, "The law does not so

recognize." (*Id.* at 18.)

## III.    Direct Appeal

On direct appeal, McCray, with the assistance of counsel, brought several claims

before the Illinois Appellate Court and argued that: (1) the evidence at trial was

insufficient to prove his guilt beyond a reasonable doubt; (2) he was denied a fair trial

because the court admitted testimony of witnesses despite the fact that the defendant was

unable to meaningfully cross-examine them; (3) the court admitted the double-hearsay

statement of informant Lee, including a confession by McCray, even though Lee had no

personal knowledge of the actions described in the statement; (4) the court admitted

evidence that the codefendants had pled guilty to the same charges for which McCray

was on trial; (5) during closing argument, a prosecutor purportedly misstated the law

concerning prior inconsistent statements and the reliability of statements given during

police interrogation; and (6) the compulsory extraction of his blood and the storage of his

DNA profile constituted an unreasonable search and seizure.  (*Id.* at 18–10.)  The appellate court rejected these claims and upheld McCray's conviction.  (*Id.* at 2.)

In his Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, McCray, with the assistance of counsel, argued one claim—that the prosecution misstated the law during closing argument.  (*See* Resp. Ex. E, PLA, *People v. McCray*, No. 104380.)  The Supreme Court denied his petition.  (Resp. Ex. F, Order Denying PLA, *People v. McCray*, No. 104380 (Ill. 2007).)

**IV.     Post-Conviction Appeal**

McCray sought post-conviction relief from his judgment pursuant to Section 2.1 of the Post-Conviction Hearing Act, 725 Ill. Comp. Stat. Ann. 5/122-2.1 (West 2002), bringing the following claims in his pro se petition: (1) he was intentionally indicted under a non-existent statute;  (2) his arrest violated the Fourth Amendment; (3) his trial counsel was ineffective for failing to raise issues pertaining to the indictment against him and the constitutionality of his arrest; (4) his trial counsel was ineffective for failing to call alibi witnesses; and (5) his appellate counsel was ineffective for failing to challenge the effectiveness of his trial counsel on these grounds.  (*See* Resp. Ex. G, Post-Conviction Pet., *People v. McCray*, No. 99-CR-3428; Resp. Ex. H, Order Denying Post-Conviction Relief, *People v. McCray*, No. 99-CR-3428 (Cook Cty. Cir. Ct.).)  The trial court denied his relief.  (Resp. Ex. H.)

On appeal, his appointed counsel filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 559, 107 S. Ct. 1990, 1995 (1987) (permitting state appointed counsel to withdraw in collateral proceedings since petitioners do not have Constitutional right to counsel).  McCray re-submitted his post-conviction petition,

and, after the Illinois Appellate Court reviewed his counsel's brief and McCray's original post-conviction petition, it affirmed the trial court decision. (*See* Resp. Ex. I, Mot. to Withdraw, *People v. McCray*, No. 1-08-0669; Resp. Ex. J, *People v. McCray,* No. 1-08-0669 (Ill. App. 1st Dist. 2009).)

In his post-conviction PLA to the Illinois Supreme Court, McCray raised the following issues: (1) the trial court did not find and apply the law in effect at the time of the offense; (2) his trial counsel was ineffective because he did not provide exculpatory photographs that indicated police abuse; (3) his trial counsel was ineffective because he failed to call alibi witnesses; and (4) his appellate counsel was ineffective for failing to raise these claims on direct appeal as well as for raising certain claims in his direct appeal to Illinois Appellate Court but not in his PLA. (*See* Resp. Ex. K, PLA, *People v. McCray*, No. 108996.) The Illinois Supreme Court denied his petition. (*See* Resp. Ex. L, Order Denying PLA, *People v. McCray,* No. 108996 (Ill. 2009).)

## V.     Federal Habeas Petition

McCray filed a petition for writ of habeas corpus in this Court pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, asserting ten claims:

1. the evidence was insufficient to find him guilty beyond a reasonable doubt;

2. his Confrontation Clause rights were violated when the trial court allowed the State to introduce, as substantive evidence, out of court statements made by witnesses Stephens and Richardson because they denied making these statements at trial;

3. the trial court erred by admitting a signed statement from informant witness Lee because Lee did not have personal knowledge of the actions described in his statement;

4. the prosecuting attorney misstated the law during closing arguments and was not properly admonished by the trial court;

5. his right to due process was violated when he was charged and convicted under a 1992 statute but sentenced under a 1998 statute;

6. he was subject to an illegal and warrantless arrest and an illegal search and seizure in violation of the Fourth Amendment;

7. trial counsel was ineffective for failing to challenge McCray's warrantless arrest and illegal search and seizure that violated the Fourth Amendment;

8. trial counsel was ineffective for failing to present photographs during a suppression hearing that demonstrated that McCray's statements were physically coerced;

9. trial counsel was ineffective for failing to call alibi witnesses; and

10. appellate counsel was ineffective for failing to raise these claims on direct appeal, as well as for raising certain claims in his direct appeal to Illinois Appellate Court but not in his PLA.

## PROCEDURAL DEFAULT

### I.   Standard of Review

Before we may consider a petition for writ of habeas corpus on its merits, the petitioner must give the state courts one full opportunity to resolve any constitutional issues by proceeding through the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Crockett v. Hulick,* 542 F.3d 1183, 1992 (7th Cir. 2008); *Malone v. Walls,* 538 F.3d 744, 753 (7th Cir. 2008).  In order to give the state courts one full opportunity to resolve federal claims, the petitioner must: (1) exhaust all available state court remedies; and (2) fairly present any federal claims in state court.  *Picard v. Connor,* 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)); *Perruquet v. Briley*, 390 F.3d 505, 513–14 (7th Cir. 2004) (citing 28 U.S.C. § 2254(b)(1)(A)).

A petitioner exhausts his remedies when no state remedies relating to his claims remain available. *Picard,* 404 U.S. at 275, 92 S. Ct. at 512*; Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir. 1999). Otherwise, the exhaustion doctrine precludes the federal court from hearing the petition. *Perruquet,* 390 F.3d at 513–14.

A petitioner fairly presents his claim by asserting the operative facts and controlling legal principles on which each claim depends to a full round of the state's established appellate process. *Smith v. Mckee*, 598 F.3d 374, 382 (7th Cir. 2010); *Perruquet,* 390 F.3d at 519; *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001). For federal habeas relief from a conviction in Illinois state court, a petitioner must assert each claim for which he seeks habeas relief to both the Illinois Appellate Court and the Illinois Supreme Court in a petition for discretionary review. *Smith,* 598 F.3d at 382 (citing *Boerckel*, 526 U.S. at 845, 119 S. Ct. at 1732). While enforcing fair presentment, we are cognizant of its purpose to allow state courts to first adjudicate federal issues. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (citing *Picard*, 404 U.S. at 278, 92 S. Ct. at 513). The key to fair presentment is that the substance of the federal claim is presented. *Id.* (citing *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982) (per curiam)). However, it is not enough to have previously asserted just the facts or just the legal principles on which a writ of habeas corpus may rely or to assert claims that are merely similar to those that are now raised in the habeas petition. *Id*.

Notwithstanding a petitioner's fair presentation of federal claims at the state court level, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501

U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991); *Moore v. Bryant,* 295 F.3d 771, 774 (7th Cir. 2002) (citing *Stewart v. Smith,* 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002)).

A petitioner can overcome procedural default if (1) there is cause for that failure *and* actual prejudice as a result of the alleged violation; or (2) procedural default "would lead to a 'fundamental miscarriage of justice.'" *House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 2076 (2006); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *Steward v. Gilmore,* 80 F.3d 1205, 1211–12 (7th Cir. 1996). In order to establish cause, the petitioner must show that some external impediment prevented him from presenting his federal claim in state court. *Smith,* 598 F.3d at 382; *Perruquet*, 390 F.3d at 514–15 (citing *Murray v. Carrier,* 477 U.S. 478, 488, 492, 106 S. Ct. 2639, 2645, 2648 (1986)). To meet the prejudice requirement "he must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982) (emphasis in original)). "The fundamental miscarriage of justice exception requires a claim that the defendant be actually innocent of the crime for which he or she is imprisoned." *Steward,* 80 F.3d at 1211–12 (citing *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19 (1992)).

Finally, the government implicitly waives its contention that a claim is procedurally defaulted when it responds to one habeas claim on the merits and others on the basis of procedural default. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008); *Perruquet*, 390 F.3d at 516.

**II. Analysis**

McCray concedes that Claims 1, 2, and 3 were not fairly presented to the Illinois Supreme Court in a petition for discretionary review. (Traverse at 5–6.) However, McCray seeks to avoid procedural default by claiming that his appellate counsel was ineffective for winnowing these claims from his first direct appeal to his PLA. (*Id.*) Although ineffective assistance of counsel can constitute cause to overcome procedural default, a defendant's right to counsel does not extend to discretionary appeals and is limited to the first appeal of right. *Anderson v. Cowan,* 227 F.3d 893, 901 (7th Cir. 2000) (citing *Coleman,* 501 U.S. at 753–54, 111 S. Ct. at 2566–67 (1991) ("Attorney error that constitutes ineffective assistance of counsel is cause."); *Wainwright,* 455 U.S. at 587, 102 S. Ct. at 1302 (1982) ("[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals."); *Finley,* 481 U.S. at 555, 107 S. Ct. at 1993 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.")). Therefore, ineffective assistance of counsel does not constitute cause when the petitioner asserts his counsel should have raised claims in a PLA to the Illinois Supreme Court. *Id.*; *see U.S. ex rel., Bruce v. McCann,* 598 F. Supp. 2d 890, 896–97 (N.D. Ill. 2009) ("[B]ecause Petitioner had no constitutional right to counsel in his discretionary petition to the Illinois Supreme Court, he cannot claim ineffective assistance of counsel based on counsel's failure to raise arguments in that petition."). Accordingly, Claims 1, 2, and 3 are procedurally defaulted.

Claim 5 is also procedurally defaulted. In his pro se post-conviction petition, McCray asserted that the state indicted him under sections 9-1, 18-2, and 12-11 of the Illinois Compiled Statutes 1992, as amended, in violation of the Illinois and United States

constitutions.  (*See* Resp. Ex. G.)[2]  There, he asserted that these statutes do not contain

penalties or degrees of punishment, and, as such, do not exist as penal statutes.  (*Id*.)

Within the same claim he also argues that the state was required to charge him under

sections 9-1, 18-2, and 12-11 of the Illinois Compiled Statutes 1998, as amended, since

those were in effect at time of his offense.  (*Id.* ("The people were required to charge him

under (1998 as amended) [sic] and no other.").)  McCray goes on to assert that

prosecutors had engaged in a pattern of misconduct for eleven years by knowingly

charging defendants under a non-existent 1992 statute in order to gain discretion in

sentencing.[3]  (*Id*.; *see* Resp. Ex. I.)

In McCray's post-conviction PLA and his habeas petition, he similarly asserts

that the court applied the wrong law with respect to his sentence, but, unlike his original

post-conviction petition, he now argues that the 1998 statute was not yet in effect, and, as

a result, he should have been sentenced and convicted under the 1992 statute.  (Petr. Br.

at 53; *see also* Resp. Ex. K at 5–6.)

In response to the government's argument that these two claims are distinct,

McCray argues that all three claims are identical; that is, all three assert "the judgment

was void because a statute was used against him which was not in effect at the time his

offense occurred."  (Traverse at 8.)  McCray is correct insofar as both claims rely on the

same constitutional grounds for which his conviction could be overturned.  However, to

avoid default, McCray must present the *operative facts* in addition to the legal principles

for his claim.  *Smith,* 598 F.3d at 382; *Perruquet,* 390 F.3d at 519.  It is true that fair

---

[2] The handwritten pro se petition does not contain page numbers.

[3] In his second enumerated claim, which is related to his first claim but not addressed by the state court, McCray asserted that citing the wrong statute (i.e., ILCS 1992 as amended) rendered the indictment null because the defendant could show prejudice since the state did so intentionally.

presentment only requires the "substance of the federal claim be fairly presented," *Verdin*, 972 F.2d at 1474 (quoting *Picard*, 404 U.S. at 278, 92 S. Ct. at 513), but we cannot say that the distinct factual allegations "alert[ed] . . . the state court to the federal nature of the claim [as] to permit [it] to adjudicate . . . the federal issue." *Id.* (quoting *Harless,* 459 U.S. at 6, 103 S. Ct. at 277). Instead, McCray's post-conviction petition rested on the assertion that the 1998 statute was in effect, whereas the claim in his PLA and habeas petition argues that the 1998 statute was not in effect. These are distinct, and in fact mutually exclusive, claims and deciding this issue would deprive the Illinois courts of the opportunity to decide the constitutional question before we do. *See Boerckel,* 526 U.S. at 845, 119 S. Ct. at 1732; *Verdin,* 972 F.2d at 1473. Thus, Claim 5 is procedurally defaulted.

In Claim 6, McCray argues that police subjected him to an illegal and warrantless arrest and an illegal search and seizure when police entered George Ward's[4] apartment and arrested him without a warrant or probable cause in violation of the Fourth Amendment. (Petr. Br. at 56–68.) However, the Illinois court held that McCray waived this claim when he raised it in his post-conviction petition but did not do so on direct appeal. (Resp. Ex. H at 6.) Based on the doctrine of waiver, Illinois law allows courts to summarily dismiss petitions that raise issues that could have been raised earlier, but were not. (*See id.* at 6–7); *People v. Blair*, 215 Ill. 2d 427, 443–44, 831 N.E.2d 604, 615 (Ill. 2005). Hence, the Illinois court's decision rests on a state procedural ground independent of the federal question in the current habeas petition, and, therefore, it is procedurally defaulted. *Sturgeon v. Chandler,* 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of

_____

[4] Although the state court record, which we adopt as true, states McCray was arrested in his own apartment, McCray alleges in his petition that it was the home of George Ward. Regardless, the factual discrepancy is irrelevant.

waiver by the state postconviction court is enough to establish an adequate and independent state ground."); *Moore,* 295 F.3d at 774.

In Claim 7, McCray argues that his trial counsel was ineffective for failing to challenge his arrest at trial. (Petr. Br. at 60–61.) Although McCray raised this claim under its own heading in his petition for post-conviction relief, (*see* Resp. Exs. G at 30–31, I at 13), he did not raise it in a separate heading in his post-conviction PLA to the Illinois Supreme Court, (*see* Resp. Exs. E, K). Instead, he embedded the substantive portions of Claims 6[5] and 7 of this habeas petition—that his arrest was in violation of the Fourth Amendment and that his trial counsel was ineffective for failing to pursue this issue—within Claim IV of his post-conviction PLA. Claim IV of his PLA is headed with a claim that his appellate counsel was ineffective for failing to pursue a number of issues. (*See* Resp. Ex. K at 14–15.) Within it, he describes his Fourth Amendment claim, why his trial counsel was ineffective for failing to pursue this issue, and concludes his appellate counsel was also ineffective for not attacking his trial counsel's failure to seek a meritorious claim. (*See id.* at 14.) Most importantly, McCray enumerates the four claims his appellate counsel should have pursued, including Claim 7 of this habeas petition, and declares "[o]n collateral appeal, petitioner has, and continues, to preserve these issues for adjudication." (*Id.*)

Before we begin our fair presentment analysis of this claim, we must be "mindful of our obligation to construe liberally the submissions" of pro se petitioners. *McGee v. Bartow*, 593 F.3d 556, 565 (7th Cir. 2010); *Lewis*, 390 F.3d at 1027 (noting that pro se petitions in state courts are owed a "general interpretation"). As such, we hold that

---

[5] We find that, like Claim 7, Claim 6 was fairly presented to the Illinois courts even though Claim 6 was procedurally defaulted for the other reasons explained above.

McCray fairly presented Claim 7 to the Illinois Appellate Court and the Illinois Supreme Court. Where McCray clearly expressed his intent to have the Illinois Supreme Court review these claims in his PLA and presented the operative facts and legal principles required for fair presentment, it is immaterial that they were embedded within a different claim, particularly for a pro se petitioner. *See Malone*, 538 F.3d at 755.

This case is analogous to *Malone*, 538 F.3d 744. There, the Seventh Circuit held that a pro se petitioner who raised his ineffective assistance of trial counsel within a claim of ineffective appellate counsel did not procedurally default the former claim because he made it clear he sought review of that claim. *Id.* at 755. Thus, he alerted the state court of the nature of the claim and satisfied the requirements of fair presentment. *Id.*; *see also McGee*, 593 F.3d at 567 (holding that "readily discernible" claims embedded within an ineffective assistance claim were not procedurally defaulted); *cf. Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351 (2004) ("[A] state prisoner does not 'fairly present' a claim . . . if that court must read beyond a petition or a brief . . . [to] alert it to the presence of a federal claim").

While in *Lewis* the Seventh Circuit held that independent habeas claims that were raised only as examples of attorney ineffectiveness in the petitioner's post-conviction petitions were not fairly presented because they were not distinct claims within those petitions, 390 F.3d at 1026, we find that the present case is closer to *Malone* than *Lewis*. Unlike *Lewis*, McCray raised the claims in his habeas petitions as distinct headings in his original post-conviction petition and his post-conviction appeal. (Ex. G.) Although he did embed these claims in his post-conviction PLA, he still presented the operative facts and legal principles to the state court for review, and, most importantly, he explicitly

announced in the PLA that he sought independent review of these claims by the Illinois Supreme Court. (Resp. Ex. K at 14.) Thus, McCray's petition properly alerted "the state court to the federal nature of the claim and [permitted] that court to adjudicate squarely that federal issue." *Verdin*, 972 F.2d at 1474. For these reasons, we hold that Claim 7 is not procedurally defaulted. *See McGee,* 593 F.3d at 567 n.9 (recognizing exceptions for embedded claims for a petitioner that made it clear which issues he was pursuing).

Because the government did not address whether Claims 4, 8, 9, and 10 were procedurally defaulted, it has waived that defense, and we need not address those claims on that basis. *See Perruquet,* 390 F.3d at 515.

## MERITS

### I.     Standard of Review

Under the AEDPA, we may grant McCray's request for habeas relief with respect to any claim decided on the merits by the state court only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor,* 529 U.S. 362, 404–05, 120 S. Ct. 1495, 1519 (2000). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams,* 529 U.S. at 405, 120 S. Ct. at 1519; *Woods v. McBride,* 430 F.3d 813, 816–17 (7th Cir. 2005); *Harding v. Walls,* 300 F.3d 824, 827–28 (7th Cir. 2002).

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407–08, 120 S. Ct. at 1521. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *Id.* at 410 ("An unreasonable application of federal law is different from an incorrect application."); *Yarborough v. Gentry,* 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002); *Henderson v. Briley,* 354 F.3d 907, 909 (7th Cir. 2004) ("[The] question before a federal court on collateral review . . . is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'"). We analyze McCray's claims under this standard.

## II.  Analysis

### A.  Prosecuting Attorney Misstated the Law During Closing Arguments

In Claim 4, McCray asserts he was deprived of due process of law when the prosecutor misstated the law during closing arguments. During closing arguments, the prosecuting attorney stated:

> [W]hen [Antonio Richardson] goes on to say that he sees defendant shoot Dwayne Hill as he is looking through that walkway, it's just as if he had said it on the stand. Because the law recognizes that when individuals are in a setting such as an interview room with just a State's attorney there and just a police officer

there and they are not faced with that jury and they are not faced with that judge and they are not faced with that determination of guilt or innocence, they are more likely to tell what really happened.

(Resp. Ex. A at 17–18.)  The defense objected to this statement, and the judge responded, "the law does not so recognize."[6] (Resp. Ex. A at 18.)  According to McCray, the defense "begged for clarity," but the judge only responded "Sustained. Sustained."  (Petr. Br. at 48.)  McCray argues that the judge's response might have been adequate to the legally-trained mind, but the judge should have offered a stronger rebuke to ensure the jury considered only appropriate information.  (*Id.* at 49.)

We find that the state courts' decisions were not contrary to, nor did they unreasonably apply, "clearly established Federal law, as determined by the Supreme Court of the United States."  *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 404–05, 120 S. Ct. at 1519.  "Arguments of counsel which misstate the law are subject to objection and correction by the court."  *Boyde v. California*, 494 U.S. 370, 384, 110 S. Ct. 1190, 1200 (1990) (citing as an example *Greer v. Miller*, 483 U.S. 756, 765–66 & n. 8, 107 S. Ct. 3102, 3109 & n. 8 (1987)).  Thus, to the extent that the prosecutor's statements misled the jury, the sustained objection and statement that "the law does not so recognize" properly instructed the jury to disregard the statement.  *See Ellison v. Acevedo*, 593 F.3d 625, 637 (7th Cir. 2010) ("[T]o the extent that the jurors may have [mis]understood the prosecutor's remarks . . . the trial judge's ruling on the objection alerted them that the statement should be ignored."); *U.S. ex rel., Clark v. Fike*, 538 F.2d 750, 759 (7th Cir. 1976) ("Since the sentence alone was not egregious, any prejudice

---

[6] McCray's petition states that the judge said "There is nothing in law."  (Petr. Br. at 48.) However, we accept the Illinois Appellate Court's record, which states the court responded, "The law does not so recognize."  (Resp. Ex. A. at 18.)

18

therefrom was cured by the timely objection of defense counsel and appropriate action of the court.").

In support of his claim, McCray relies on *Berger v. U.S.*, 295 U.S. 78, 84–85, 55 S. Ct. 629, 631–32 (1935), where the Supreme Court reversed the conviction of a criminal defendant after the prosecutor engaged in extensive abuses at trial. Because of the widespread prosecutorial abuse, the court held that the trial judge's sustained objections were not enough; rather, the conduct called for "stern rebuke and repressive measure and, perhaps, if these were not successful, for the granting of a mistrial." *Berger,* 295 U.S. at 85, 55 S. Ct at 632. However, the misconduct on behalf of the prosecutor in *Berger* far exceeded the single misstatement at issue here.

McCray also relies on *Darden v. Wainwright*, 477 U.S. 168, 180–81, 106 S. Ct. 2464, 2471 (1986), where the Supreme Court condemned the prosecution's closing arguments in the habeas petitioner's criminal trial but refused to overturn his conviction because the prosecutor's "comments [did not] so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." As McCray correctly notes, *Darden* based its decision, in part, on the defense inviting some of the prosecutor's comments. (Petr. Br. at 41.) However, the Supreme Court rejected the defendant's claim even though the prosecutor's comments were significantly more egregious than the misstatement in this case. *See Darden,* 477 U.S. at 182, 106 S. Ct. at 2472. Thus, *Darden* lends little support to McCray.

We cannot say the prosecutor's statement was "egregious," and, as such, the sustained objection cured any prejudice. *See Clark*, 538 F.2d at 759. This one error cited by McCray did not infect the trial with unfairness, and, therefore, the state courts'

decisions were not contrary to, nor an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. at 404–05, 120 S. Ct. at 1519.

**B.      Ineffective Assistance of Trial Counsel**

Courts analyze the Sixth Amendment right to effective assistance of counsel under the framework set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1994).  To support an ineffective assistance claim, a petitioner must show that specific acts or omissions by his lawyer (1) fell below an objective standard of reasonableness under the circumstances; and (2) yielded a reasonable probability that, but for the errors, the proceeding would have culminated in a different result. *Id.* at 688–94.  In the context of a § 2254 review, however, we do not simply apply the *Strickland* test as if we were reviewing the state court conclusions anew. *Williams,* 529 U.S. at 405, 410.  Rather, we focus on the constraints of the AEDPA and determine whether the Illinois courts either confronted facts that are "materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to [the Supreme Court's result]," or made a decision that was "objectively unreasonable" under *Strickland*. *Id.*

In support of a finding that his trial counsel was ineffective, McCray puts forth Claims 7, 8, and 9 to show that the cumulative errors of his trial counsel amounted to ineffective assistance.  (Petr. Br. at 71.)  We now turn to those claims.

In Claim 7, McCray argues that his trial counsel was ineffective for failing to challenge petitioner's warrantless arrest and illegal search seizure that violated the Fourth Amendment.[7]  In support of the Fourth Amendment claim, McCray argues that on the

---

[7] The post-conviction trial court opinion does not address this issue.  Although the post-conviction trial court held that the claim that the arrest was illegal was procedurally barred, it makes no mention of the trial counsel's effectiveness with respect to raising this issue.  (*See* Resp. Ex. H.)  This claim, however, was argued on the merits in McCray's attorney's motion to withdraw as counsel, which was reviewed by the post-conviction appellate court that affirmed

day of his arrest, police kicked down the door of the home of George Ward[8] without

presenting a warrant. (Petr. Br. at 56.) He further argues that he was present in the home

with Ward and his sister, Jessica McCray, and that no one gave permission for the search,

contrary to the testimony of Detective Harmon who stated that someone permitted

officers to enter. (*Id.*) Lastly, he argues that a domestic disturbance claim filed against

him that day by Tina Gentry was insufficient probable cause.[9] (*Id.*) He attached to his

habeas petition affidavits from Jessica McCray, Ward, and Gentry supporting these

statements.[10] (*See* Petr. Ex. B, George Ward Aff., Sept. 18, 2007; Petr. Ex. C, Jessica

McCray Aff., Sept. 18, 2007; Petr. Ex. D, Tina Gentry Aff., Aug. 15, 2007.)

We find that the state post-conviction courts reasonably applied *Strickland*. First,

Detective Harmon's testimony indicated that he was permitted to enter the house. (Petr.

Br. at 56; Resp. Exs. I at 15; M at 1196.) In addition, the suggestion that the police

lacked probable cause for the arrest is contradicted by the statements of Richardson,

Stephens, and Lee, which implicated McCray and were obtained before his arrest. (*See*

Resp. Exs. A at 5, 7, 11; I at 15.) Given the ample evidence of probable cause as well as

the detective's trial testimony that someone permitted him to enter the house, it was not

"objectively unreasonable" for the state court to find that McCray's counsel did not

"f[a]ll below an objective standard of reasonableness under the circumstances" for failing

to litigate the Fourth Amendment issue. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at

2064; *see also Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986)

---

the trial court's decision. (*See* Resp. Ex. I.) As such, we will review the claim on the merits because it is not evident that the decision of the "state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore*, 295 F.3d at 774.

[8] *See supra* note 4.

[9] The domestic disturbance claim is not mentioned in any of the state court opinions.

[10] These affidavits were not attached to his state court briefs.

(holding that a petitioner must succeed on his Fourth Amendment claim in order to obtain habeas relief for his counsel's failure to litigate it).

Even if the arrest lacked probable cause and McCray's attorney successfully pursued it, McCray would still fail to satisfy the "but-for" prong of *Strickland* because "an arrest without probable cause violates the Fourth Amendment but does not imply the invalidity of a conviction, because courts do not 'suppress the body' of the accused." *Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010). In other words, McCray may be entitled to relief under 42 U.S.C. § 1983, but this would not undermine his conviction because the exclusionary rule would not apply. *Evans,* 603 F.3d at 364.

In Claim 8, McCray argues that his trial counsel was ineffective for failing to provide photographs during a suppression hearing that indicated that police beat him during his interrogation. (Petr. Br. at 62–67.) He attached photographs that Gentry allegedly found in a police station garbage can on the day she reported the domestic incident against McCray, which show one picture of him without injuries and another one of his face beaten. (*See* Petr. Exs. A; D at ¶¶ 7–9.)[11] However, this claim is not supported by the record. At trial, McCray testified that he confessed because police told him they had statements from his codefendants and he thought he would receive a lesser sentence if he confessed. (Resp. Ex. A at 12–13.) Moreover, McCray presented testimony of a defense attorney who his family had hired on the day he made his

---

[11] McCray asserts that he did not present the photographs on direct appeal because his attorney would not release them to him. (Petr. Br. at 63.) However, we question the credibility of these photographs based on Gentry's affidavit. In it, she states that she was at the police station on January 8, 1999 to report the domestic incident. (Petr. Ex. D ¶ 4.) She then states that, while she was there, she inadvertently discovered the pictures of McCray. (*Id.* ¶ 7.) However, McCray was not interrogated until 11:30 p.m. on January 8, and he did not make his statement until 3:30 a.m. the next morning. (Resp. Ex. A at 11.) It is implausible that Gentry would be at the police station from the time she reported the incident (before McCray's arrest) until he confessed early on January 9th.

statement to ASA Coleman. (Resp. Ex. A at 12.) Despite meeting with McCray, he never mentioned in his testimony that McCray appeared injured. (Resp. Ex. M. at 1400–04.) Therefore, we hold that the state court did not misapply *Strickland* in denying McCray's claim of ineffective assistance of trial counsel for failure to produce exculpatory photographs of police coercion.

In Claim 9, McCray argues that his trial counsel was ineffective for neglecting to call alibi witnesses. (Petr. Br. at 67–70.) The post-conviction trial court rejected McCray's claim because he failed to attach affidavits and explain the significance of any witnesses' potential testimony. (Resp. Ex. H at 8.) Additionally, his attorney's motion to withdraw as counsel on his post-conviction appeal indicated that these arguments were without merit because only one of the two witnesses alleged being with McCray on the night of the incident—a fact that is not supported by McCray's testimony. (Resp. Ex. I at 16.) After reviewing McCray's brief, his attorney's motion to withdraw, and the post-conviction trial court's order, the Illinois Appellate Court granted his attorney's motion and affirmed the trial court's judgment. (Resp. Ex. J at 2.) We hold that the state courts conducted a reasonable application of *Strickland* based on McCray's failure to support his claims of alibi witnesses in his post-conviction petition and his conflicting testimony at trial.[12] *See also Brunt v. McAdory*, 65 Fed. App'x 59, 60, 62 (7th Cir. 2003) (affirming the district court's denial of habeas relief based on trial counsel's failure to call alibi witnesses because petitioner did not substantiate his post-conviction petition with affidavits or other factual support); *U.S. ex rel., Kizer v. Hulick,* No. 02 C 3400, 2008 WL 5211008, at *5 (N.D.Ill. Dec. 9, 2008) (holding that the post-conviction trial court's

---

[12] In his habeas petition, McCray does attach affidavits from these two witnesses. However, this inclusion is immaterial because the question for us is whether the state courts' analysis was contrary to or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d).

decision concerning ineffective assistance was not defective because the petitioner failed to produce affidavits or offer other evidence showing ineffective assistance).

### C. Ineffective Assistance of Appellate Counsel

In Claim 10, McCray raises multiple issues relating to his claim of ineffective assistance of appellate counsel. In the first portion of Claim 10, McCray argues his appellate counsel was ineffective for failing to raise several issues in his PLA to the Illinois Supreme Court on direct appeal. (Petr. Br. at 72.) Habeas relief is only available insofar as the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). McCray did not have a Constitutional right to counsel to file his discretionary appeal to the Illinois Supreme Court. *Finley,* 481 U.S. at 555, 107 S. Ct. at 1993; *Wainwright,* 455 U.S. at 587, 102 S. Ct. at 1301. "Where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman,* 501 U.S. at 752, 111 S. Ct. at 2566. Therefore, this claim is not cognizable under federal habeas review. *See Bruce,* 598 F. Supp. 2d at 896 (rejecting an identical claim on the same grounds).

In the second portion of Claim 10, McCray argues that his appellate counsel was ineffective on direct appeal to the Illinois Appellate Court for not raising Claims 5 through 9 of this petition. (Petr. Br. at 76.) We have already addressed and rejected Claims 6 through 9 on the merits.[13] Since these underlying claims that McCray asserts his appellate counsel should have raised are meritless, the alleged failure to raise them cannot stand. *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004); s*ee English v. Cody*,

---

[13] We held that Claim 6 was procedurally defaulted, but we addressed its merits in our analysis of Claim 7.

241 F.3d 1279, 1283 (10th Cir. 2001) ("If the underlying issue was not valid, his counsel was not ineffective for failing to raise it on direct appeal.").

Finally, McCray asserts that his appellate counsel was ineffective on direct appeal for failing to raise what is Claim 5[14] of this petition—that his right to due process was violated when he was "indicted and convicted under 1992 sentencing penology, but sentenced under ILCS 1998 sentencing penology (as amended and recodified) [sic]." (Petr. Br. at 76.) McCray's Constitutional claim stems from 730 Ill. Comp. Stat. Ann. 5/3-6-3(2) (West 1998) ("Truth-In-Sentencing Act"), which, as McCray points out, requires a prisoner convicted of first-degree murder to serve his or her entire sentence and limits credit for good conduct for convictions on home invasion and armed robbery to 4.5 days for each month of the sentence. McCray argues that this statute was applied to him retroactively in violation of the Ex Post Facto Law Clause. (Petr. Br. at 53); s*ee* U.S. Const. art. 1, § 9. As McCray notes, Public Act 89-404, § 40 (Ill. eff. Aug. 20, 1995) was struck down by the Illinois Supreme Court for violating the single subject rule. *See People v. Reedy*, 186 Ill. 2d 1 (Ill. 1999). *Reedy* invalidated the law, but the Illinois Legislature reenacted the Truth-In-Sentencing provisions through P.A. 89-462, Art. 2, § 280 (Ill. eff. May 29, 1996); P.A. 90-592, § 5 (Ill. eff. June 19, 1998); and P.A. 90-593, § 40 (Ill. eff. June 19, 1998). Therefore, the sentencing provisions to which McCray objects were in effect on October 29, 1998, the date of McCray's offense, despite the holding in *Reedy*. As such, McCray's Ex Post Facto argument is without merit.

_____

[14] We held that Claim 5 was procedurally defaulted, but, in its answer, the government asserts that Claim 10 is not procedurally defaulted. As a result, the government has waived this defense, and we must address it on its merits. *See Perruquet,* 390 F.3d at 515.

Second, insofar as McCray is arguing that the state cited the wrong statute,[15] his conviction is not entitled to habeas relief. "For an indictment to be legally sufficient, it must . . . state each of the elements of the crime charged; . . . provide adequate notice of the nature of the charges[; and] . . . allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." *U.S. v. Fassnacht,* 332 F.3d 440, 444–45 (7th Cir. 2003). In 1992, the Illinois Legislature replaced the Illinois Revised Statutes numbering scheme with the Illinois Compiled Statutes. *See People v. Suastegui,* 374 Ill. App. 3d 635, 640, 871 N.E.2d 145, 149 (Ill. App. Ct. 1st Dist. 2007). We assume McCray is referencing this change when he continually compares "1992 as amended" versus "1998 as amended." (*See* Petr. Br. at 53.) However, this change did not affect the substantive portions of the crimes McCray was convicted under, which were nearly identical in 1992 and 1998. *Compare* P.A. 87-525, § 1 (Ill. eff. Jan. 1, 1992) *with* P.A. 90-213, § 5 (Ill. eff. Jan. 1, 1998) (Murder) (only amending sections on the application of the death penalty); *compare* P.A. 86-820, Art. II, § 2-16 (Ill. eff. Sept. 7, 1989) *with* P.A. 90-787, § 5, (Ill. eff. Aug. 14, 1998) (Home Invasion) (adding a subsection defining "a dwelling place of another" but making no substantive changes); *see* Pub. Act 80-1099, § 1 (Ill. eff. Feb. 1, 1978) (Robbery) (in effect until 2000); (*see also* Resp. Ex. H at 6 (explaining how the change from the Illinois Revised Statutes to the Illinois Compiled Statutes did not change the charges against McCray).)

As such, even if the state cited the wrong year, the requirements of *Fassacht* were met. Moreover, since the Truth-In-Sentencing Act exists independently of these substantive crimes, *see* 730 Ill. Comp. Stat. Ann. 5/3-6-3, it could not have been included

---

[15] It is not clear whether McCray makes this argument, but he does comment that he was indicted under the wrong statute, (Petr. Br. at 53), and he raised a similar argument in his post-conviction appeals. (*See e.g.* Ex. G.) Out of an abundance of caution, we will address the argument.

in his indictment or misled him to an extent that violated the Due Process Clause. *See U.S. ex rel., Sharp v. Acevedo,* No. 08 C 1668, 2009 WL 2032929, at *10 (N.D. Ill. July 10, 2009). Since Claim 5 is without merit, McCray fails to prove his counsel was ineffective for not raising it. *See Martin*, 384 F.3d at 852.

## CONCLUSION

For the reasons set forth above, we deny McCray's petition. It is so ordered.


_____
Marvin E. Aspen
U.S. District Judge

Dated: September 7, 2010