UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. SIDNEY MCCRAY, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 10 C 463 ) ) Judge Marvin E. Aspen |
| DONALD GAETZ, Warden | ) ) |
| Respondent. | ) ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Sidney McCray has filed a notice of appeal from our memorandum opinion and order, entered September 7, 2010 ("Opinion"), denying McCray's petition for a writ of habeas corpus. He seeks a certificate of appealability ("COA"), as well as leave to pursue the appeal *in forma pauperis*. For the reasons set forth below, we grant the COA as to Claims 8 and 10 but deny it in all other respects. We also grant McCray leave to appeal *in forma pauperis*, pursuant to Federal Rule of Appellate Procedure 24(a).

**BACKGROUND**

In 2003, a jury convicted McCray of first-degree murder, home invasion and armed robbery in connection with the death of Dwayne Hill. *See McCray v. Gaetz*, No. 10 C 463, 2010 WL 3547983, at *1 (N.D. Ill. Sept. 7, 2010). The Opinion explains the circumstances of McCray's conviction, as well as his appellate and post-conviction proceedings, and we will not recount those details here. (*Id.* at *1–4.) Presently before us is McCray's request for a COA on

the same ten issues raised in his habeas petition.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. §§ 2254 or 2255. *See* 28 U.S.C. § 2253©. We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To make a substantial showing of the denial of a constitutional right where the district court rejected a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4, 103 S. Ct. 3383, 3395 (1983)). If the district court rejected "a petitioner's claims on procedural grounds without reaching the prisoner's underlying constitutional claim," it should only issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis added).

## ANALYSIS

**I.     Procedurally Defaulted Claims (Claims 1 through 3, 5 and 6)**

In the Opinion, we concluded that McCray procedurally defaulted five of his ten claims. *McCray*, 2010 WL 3547983, at *6–8. Specifically, we held that he defaulted Claims 1 through

3, 5 and 6, precluding our review of those claims on the merits.[1]  *Id.*  McCray contends that reasonable jurists would debate that ruling.

A.     **Claims 1 through 3**

As with his earlier briefs, McCray concedes that he did not raise Claims 1 through 3[2] before the Illinois Supreme Court on direct appeal from his conviction.  (COA Applic. at 3–4, 6.)  Following the state appellate court's affirmance of his conviction, McCray pursued only one claim in his Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, concerning the prosecutor's misstatements of law during closing arguments.  (*Id.*); *see McCray*, 2010 WL 3547983, at *3.  McCray, who was represented at the time, simply did not present Claims 1 through 3 to the Illinois Supreme Court for review.  *McCray*, 2010 WL 3547983, at *3, 6.

Although McCray contends that his lawyer's failure to assert additional claims in the PLA constitutes ineffective assistance of counsel, this alleged constitutional violation cannot overcome the procedural default.  (COA Applic. at 3); *see McCray*, 2010 WL 3547983, at *3.  As explained in the Opinion, McCray's right to counsel did not extend to the PLA stage but rather was limited to the first level of appeal, his appeal of right.  *McCray*, 2010 WL 3547983, at *3.  The Supreme Court and Seventh Circuit have stated explicitly that a petitioner, like McCray, cannot claim ineffective assistance of counsel in a discretionary proceeding, including the PLA stage, where he has no right to counsel.  *See Coleman v. Thompson,* 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991); *Anderson v. Cowan*, 227 F.3d 893, 900–01 (7th Cir. 2000).

---

[1] We retain the numbering assigned to each claim from the habeas petition.

[2] In Claim 1, McCray argued that the evidence at trial was not sufficient for a finding of guilt beyond a reasonable doubt.  *See McCray*, 2010 WL 3547983, at *4.  Claims 2 and 3 concern the trial court's admission of out-of-court witness statements.  *Id.*

Accordingly, reasonable jurists could not question our conclusion that McCray's procedural default remains unexcused.

McCray raises a new argument in his COA application, however, and essentially claims that he committed no default. McCray asserts that he tried unsuccessfully to present the issues covered in Claims 1 through 3 by filing a supplemental PLA in addition to the PLA his lawyer had filed, which omitted certain claims against his wishes. (COA Applic. at 3–4, 6.) According to McCray, the Illinois Supreme Court denied his request to file a supplemental PLA. (*Id.*) He cites to several cases holding that a petitioner may fairly present an issue in a pro se submission filed as a supplement to counsel's brief in state court proceedings. (*Id.*) Despite its intuitive appeal, McCray's argument fails as a practical matter because he never previously mentioned this alleged attempt to file a supplemental PLA addressing Claims 1 through 3. Indeed, McCray made no reference to any such effort in any prior briefs in the record. (*See* Pet'r Mem. at 73–74, Dkt. No. 1; Pet'r Traverse at 7, Dkt. No. 18.) Nor has McCray otherwise substantiated this claim. For example, he has not provided copies of the alleged supplemental PLA addressing Claims 1 through 3, or the Illinois Supreme Court's order denying him leave to file such a PLA. Under these circumstances, we cannot conclude—nor could any reasonable jurist—that he attempted to pursue these arguments at the PLA stage of his direct appeal. Accordingly, we deny McCray's request for a COA as to Claims 1 through 3.

**B.     Claim 5**

In Claim 5 of his habeas petition, McCray alleged that his constitutional rights had been violated when the trial court sentenced him under "ILCS 1998 sentencing penology" despite his indictment and conviction "under 1992 sentencing penology." (Pet'r Mem. at 53; *see also* Pet'r

Post-Conv. PLA, Dkt. No. 16-12, Resp.'s Ex. K at 5–6.) We held that McCray had defaulted on this claim because he had framed the issue quite differently in his initial post-conviction petition. (Pet'r Post-Conv. Pet., Dkt. No. 16-8, Resp.'s Ex. G at 12–18); *McCray,* 2010 WL 3547983, at \*6–7. Indeed, at that time, he argued that he should have been tried and sentenced under the 1998 scheme; he then later argued before us that he should have been sentenced under the 1992 scheme because the 1998 scheme was invalid. *McCray,* 2010 WL 3547983, at \*6. We concluded that McCray procedurally defaulted Claim 5 because he raised distinct factual questions at different times, precluding full state court review of the issue. *Id.* at \*6–7.

We agree with McCray that reasonable jurists could debate whether that holding was proper; the issue to some extent boils down to semantics. When reading McCray's briefs liberally, his ultimate argument becomes apparent: he questions why he was sentenced under Illinois' 1998 Truth in Sentencing Act ("1998 Act"), 730 ILCS 5/3-6-3(2), which deprived him of the ability to earn good time credit and reduce the actual time he is required to serve. He contends that the trial court should have sentenced him under the prior, more lenient early release rules, like his co-defendants.[3] (*See* Pet'r Mem. at 53.)

Nonetheless, we cannot issue McCray a COA on Claim 5 because jurists of reason would not "find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1603–04. As discussed in our Opinion, and contrary to McCray's assertion, the 1998 Act was in effect when he was sentenced. *McCray,* 2010 WL 3547983, at \*13. McCray correctly points out that the Illinois Supreme Court invalidated the Act in 1999. (*See* Pet'r Mem. at 54; COA Applic. at 10.) However, pending that decision, the

---

[3] We are in no position to comment on the co-defendants' sentences.

Illinois legislature had already cured the Act and its amended provisions applied to all "offenses committed on or after June 19, 1998"—including the October 1998 crimes for which McCray was convicted. *People v. Reedy*, 186 Ill. 2d 1, 17–18, 708 N.E.2d 1114, 1121–22 (Ill. 1999) (striking the prior version of the Act for violating the single subject rule and holding that the amendatory act applied prospectively only); *see also People v. Bowens*, 307 Ill. App. 3d 484, 487, 718 N.E.2d 602, 605 (1st Dist. 1999). Accordingly, the trial court imposed the sentence pursuant to applicable law and no constitutional violation occurred. No reasonable jurist could debate otherwise.

**C. Claim 6**

In Claim 6, McCray argued that police subjected him to an unlawful arrest and an illegal search and seizure when police entered George Ward's[4] apartment and arrested McCray without a warrant or probable cause. (Pet'r Mem. at 56–68.) We found this claim defaulted because McCray had waived it under Illinois law. *McCray*, 2010 WL 3547983, at *7.

As explained in the Opinion, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Coleman,* 501 U.S. at 729, 111 S. Ct. at 2553; *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009); *Moore v. Bryant,* 295 F.3d 771, 774 (7th Cir. 2002) (citing *Stewart v. Smith,* 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002)). Put another way, "when a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will

---

[4] As noted in the Opinion, the record does not indicate precisely where McCray was arrested. Regardless, this lingering question is irrelevant. *McCray,* 2010 WL 3547983, at *7 n.4.

normally qualify as an independent and adequate state ground," precluding our habeas review. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

McCray presented this Fourth Amendment argument in the state post-conviction proceedings. (*See* Pet'r Post-Conv. Pet., Dkt. No. 16-8, Resp.'s Ex. G at 29–31.) In its opinion, the Illinois circuit court rejected this claim because McCray failed to raise it on direct appeal and thereby waived it. (1/10/08 Op., Dkt. No. 16-9, Resp.'s Ex. H at 6–7.) McCray does not dispute that he neglected to raise this issue on direct appeal. Under well-established Illinois law cited by the state court, "issues that could have been raised" on direct appeal "but were not, are waived." *People v. Miller*, 203 Ill. 2d 433, 437, 786 N.E.2d 989, 992 (Ill. 2002); *People v. Eaglin*, 292 Ill. App. 3d 677, 980–81, 686 N.E.2d 695, 697 (1st Dist. 1997); *see People v. Coleman*, 168 Ill. 2d 509, 522, 660 N.E.2d 919, 927 (Ill. 1995). The circuit court's conclusion that McCray had waived Claim 6 "is enough to establish an adequate and independent state ground." *Sturgeon*, 552 F.3d at 611 (stating specifically that "a finding of waiver by the state postconviction court" constitutes an adequate and independent state court ground); *see Woods*, 589 F.3d at 373. In light of McCray's waiver of this claim as a state procedural matter, no reasonable jurist could debate our conclusion that McCray defaulted this Fourth Amendment claim.

## II. Claims Addressed on the Merits (Claims 4 and 7 through 10)

### A. Prosecutorial Misconduct: Claim 4

In Claim 4, McCray asserted that he was deprived of due process of law when the prosecutor blatantly misstated the law during closing arguments. During closing arguments, the prosecuting attorney stated:

> [W]hen [Antonio Richardson] goes on to say that he sees defendant shoot Dwayne Hill as he is looking through that walkway, it's just as if he had said it on the stand.

> Because the law recognizes that when individuals are in a setting such as an interview room with just a State's attorney there and just a police officer there and they are not faced with that jury and they are not faced with that judge and they are not faced with that determination of guilt or innocence, they are more likely to tell what really happened.

(11/7/03 Tr., Dkt. No. 16-18, Resp.'s Ex. M at 208–209 (marked AAAA-69–70).) Defense counsel immediately objected, stating: "There is no indication in the law that that's true." (*Id.* at 209 (marked AAAA-70).) The presiding judge agreed, responding that "[t]here is nothing in the law."[5] (*Id.*) Defense counsel added: "That's absolutely a misstatement of the law." (*Id.*) The judge sustained her objection, and the prosecutor continued with the closing argument. (*Id.*)

In his habeas petition, McCray argued that the state courts erred by failing to rectify the prejudice resulting from the prosecutor's misstatements. We concluded, however, that the state court decisions on this issue were not contrary to, not unreasonably applied, established federal law. *McCray*, 2010 WL 3547983, at *10. While McCray contends that reasonable jurists would question that holding, we disagree.

There is no dispute that the prosecutor's comment was improper and, thus, the focus of our inquiry is whether reasonable jurists could debate our conclusion that McCray was not constitutionally prejudiced by the prosecutor's conduct. *See, e.g.*, *Darden v. Wainwright*, 477 U.S. 168, 179–83, 106 S. Ct. 2464, 2470–72 (1986); *Ellison v. Acevedo*, 593 F.3d 625, 635–36 (7th Cir. 2010); *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005). "Arguments of counsel which misstate the law are subject to objection and correction by the court . . . and must

---

[5] McCray is correct that we, and the Illinois appellate court, previously misreported the exact wording of the judge's response. (*See* COA Applic. at 7.) Having re-read the trial transcript, there is no doubt that the trial judge used the words included above, as McCray pointed out. Our analysis remains the same, however.

be judged in the context in which they are made." *Boyde v. California*, 494 U.S. 370, 384–85, 110 S. Ct. 1190, 1200 (1990) (citing as an example *Greer v. Miller,* 483 U.S. 756, 765–66 & n.8, 107 S. Ct. 3102, 3109 & n.8 (1987)); *Bartlett v. Battaglia*, 453 F.3d 796, 801–03 (7th Cir. 2006). In evaluating the context surrounding this type of misconduct, courts consider the factors laid out in *Darden*, which include, *inter alia*, whether the remarks implicate specific rights of the accused, the trial court's instructions, and the defendant's opportunity to rebut the prosecution's comments. *Darden*, 477 U.S. at 181–82, 106 S. Ct. at 2472; *Ellison*, 593 F.3d at 636; *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000).

Here, the prosecutor suggested to the jury that the law recognized that the witness was more likely to have been telling the truth when giving his written statement to police officers than when testifying at trial, where he recanted that earlier statement in its entirety. (*See* 11/7/03 Tr., Dkt. No. 16-18, Resp.'s Ex. M at 208–209 (marked AAAA-69–70).) Defense counsel quickly interjected, however, and the judge agreed with the defense, responding that "there is nothing in the law" to support the prosecutor's characterization of the jury instruction. (*Id.* at 209 (marked AAAA-70).) Defense counsel reiterated the objection, which the judge sustained. (*Id.*) "[T]o the extent that the jurors may have [mis]understood the prosecutor's remarks . . . the trial judge's ruling on the objection alerted them that the statement should be ignored." *Ellison*, 593 F.3d at 637. Defense counsel also had the opportunity to address this issue in her own closing argument soon after this exchange, if she deemed necessary. (*See* 11/7/03 Tr., Dkt. No. 16-18, Resp.'s Ex. M at 223–243 (marked AAAA-84–104).)

Moreover, McCray overlooks the fact that the trial judge gave appropriate jury instructions bearing on this issue. (*See id.* at 267 (marked AAAA-128).) In particular, the judge

instructed the jury that "[n]either opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." (*Id.*)  The judge also instructed jurors that they alone determine the believability of a witness and the weight, if any, to give to a witness' prior inconsistent statements.  (*Id.* at 275 (marked AAAA-136).)  Thus, the trial court not only specifically addressed the prosecutor's comments contemporaneously but also instructed the jury that, as a matter of law, closing arguments are not evidence.  *See Bartlett*, 453 F.3d at 802–03 (explaining that while incorrect jury instructions may alter the burden of proof, "misguided prosecutorial commentary" does not similarly implicate due process concerns).  Under these circumstances, we find no fault with the Illinois appellate court's determination that the judge's actions fully remedied any prejudice inflicted by the prosecutor's remarks.  (*See* 3/2/07 Op., Dkt. No. 16-1, Resp.'s Ex. A at 36–38.)  Indeed, as discussed in the Opinion, the offensive statement simply was not so egregious that "it infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 179, 106 S. Ct. at 2471 (internal quotation omitted).  Because no reasonable jurist could disagree with our assessment of Claim 4, we deny McCray's request for a COA.

### B. Ineffective Assistance of Counsel: Claims 7 through 10

As explained in the Opinion, courts analyze the Sixth Amendment right to effective assistance of counsel under the framework set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1994).  To support an ineffective assistance claim, a petitioner must show that specific acts or omissions by his lawyer (1) fell below an objective standard of reasonableness under the circumstances; and (2) yielded a reasonable probability that, but for the errors, the proceeding would have culminated in a different result.  *Id.* at 688–94, 2065–68.  In the context

of habeas review, however, we do not simply apply the *Strickland* test as if we were reviewing the state court conclusions anew. *Williams,* 529 U.S. at 405, 410. Rather, we focus on the constraints of the habeas statute and determine whether the Illinois courts either confronted facts that are "materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to [the Supreme Court's result]," or made a decision that was "objectively unreasonable" under *Strickland*. *Id*.

### 1. Claim 7

Claim 7 of the habeas petition harkens back to Claim 6, which constituted McCray's attack on the circumstances of his arrest. In Claim 7, McCray argued that his trial counsel was ineffective for failing to challenge his warrantless arrest, thereby defaulting it.

We must reject McCray's request for a COA for the same reasons that we denied his habeas petition. In the Opinion, we discussed the ample factual and legal support for the Illinois courts' conclusion that counsel's performance was not constitutionally inadequate. *McCray*, 2010 WL 3547983, at *11–12. First, counsel was not objectively unreasonable for failing to advance Claim 7 in light of the record evidence demonstrating probable cause for McCray's arrest, including witness statements implicating McCray. (*Id.*) Second, even if counsel's performance was deficient, her shortcomings did not prejudice McCray. As the Seventh Circuit recently stated, "an arrest without probable cause violates the [F]ourth [A]mendment but does not imply the invalidity of a conviction, because courts do not 'suppress the body' of the accused." *Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010). Thus, if McCray was arrested in violation of the Fourth Amendment, he might be entitled to relief under 42 U.S.C. § 1983 but the faulty arrest would not undermine his conviction. *Evans,* 603 F.3d at 364.

Reasonable jurists could not debate this conclusion.

    2.    **Claim 8**

In Claim 8, McCray argued that his trial counsel was ineffective for failing to provide photographs, during a suppression hearing, that indicated that police beat him during his interrogation. (Pet'r Mem. at 62–67; COA Applic. at 15–16.) Based on his submissions, it appears that McCray intended to argue that he had been beaten into confessing to the crimes against Hill. He would have relied on the photographs to support this argument and sought suppression of his inculpatory statement, had his trial counsel agreed to do so. (*See* Pet'r Mem. at 63–64; COA Applic. at 15–16.) McCray contends that her refusal to proffer the photographs at the suppression hearing rises to the level of ineffective assistance of counsel.

Although we identified several reasons for denying the habeas petition, *see McCray*, 2010 WL 3547983, at *12, we agree with McCray that jurists of reason could debate our conclusion. Notwithstanding certain problems associated with these photographs, as noted in the Opinion, a reasonable jurist could argue that counsel's failure to seek suppression of McCray's confession guaranteed admission of that statement as evidence and, moreover, precluded any argument at trial regarding the alleged beating and its effects on McCray. If trial counsel possessed these pictures—a set of two mug shots, one in which McCray's face appears severely bruised, allegedly taken the night he was arrested—and refused to present them despite McCray's wishes, such conduct might have fallen below the objective standard of reasonableness demanded by the Sixth Amendment. Moreover, this alleged omission may have possibly changed the outcome of the trial. *See Strickland,* 466 U.S. at 691–92, 104 S. Ct. at 2066–67. As McCray points out, his confession surely represented a critical piece of evidence

leading to his conviction. We therefore grant McCray's request for a COA as to Claim 8.

### 3. Claim 9

In his habeas petition, McCray next contended that trial counsel was ineffective for failing to locate and call alibi witnesses. (COA Applic. at 17–18.) In the post-conviction proceeding, McCray argued that counsel should have called several alibi witnesses, including Nicole Pickett and Tina Gentry. (Pet'r Post-Conv. Pet., Dkt. No. 16-8, Resp.'s Ex. G at 32.) He provided affidavits from both witnesses during that proceeding.[6] (*See id.* at 48–49 (Pickett) & 51–52 (Gentry).) The circuit court rejected Claim 9 because McCray had not proven the significance of the alibi testimony, and the appellate court affirmed that conclusion. (*See* 7/24/09 Op., Dkt. No. 16-11, Resp.'s Ex. J at 2; 1/10/08 Op., Dkt. No. 16-9, Resp.'s Ex. H at 8–9.) We agreed with their analysis and further held that the state courts reasonably applied *Strickland* because McCray's trial testimony did not mesh with the alibi he now asserts. *McCray*, 2010 WL 3547983, at *12.

Even taking a fresh look at the state courts' treatment of Claim 9, we must conclude that no reasonable jurist could debate our prior holding. It is potentially debatable whether trial counsel's failure to locate and call witnesses for an alibi defense constituted inadequate

---

[6] McCray correctly asserts that we misstated the state courts' opinions denying his post-conviction petition. (*See* COA Applic. at 17.) The state courts did *not* find that he had neglected to file affidavits in support of his post-conviction petition, as we recounted. *See McCray*, 2010 WL 3547983, at *12. Rather, they concluded that he had "failed to explain the significance of [the witnesses'] testimony." (1/10/08 Op., Dkt. No. 16-9, Resp.'s Ex. H at 8–9; *see also* 7/24/09 Op., Dkt. No. 16-11, Resp.'s Ex. J at 2 (acknowledging that McCray filed affidavits but affirming the circuit court's denial of his post-conviction petition).) This discrepancy is ultimately immaterial for purposes of this analysis.

performance.⁷  Regardless, *Strickland* requires both deficient lawyering and *prejudice*, notably absent here.  *See Strickland,* 466 U.S. at 691–92, 104 S. Ct. at 2066–67.

As referenced in our Opinion and as McCray's lawyer argued before the Illinois appellate court in his *Finley* motion,⁸ McCray did not testify that he was with Gentry when Hill was killed.⁹  In fact, he testified that he was "probably" at his sister's house and did not know, for certain, where he was on the night of the murder.  (11/7/03 Tr., Dkt. No. 16-18, Resp.'s Ex. M at 63–64 (marked ZZZ193–94).)  More importantly, and as McCray has acknowledged throughout his state and federal proceedings, the real impediment to his defense was his signed confession and the written statements of his co-defendants, all of which identified him as the shooter.  The presentation of an alibi defense, with a single witness who offers no detail about McCray's conduct that night, could not have significantly mitigated the damage done by the witness statements and confession.  (*See* Gentry 8/15/07 Aff. ¶ 11, Dkt. No. 16-8, Resp.'s Ex. G at 52.)  McCray cannot show a reasonable probability that, but for the lack of an alibi defense, "the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694, 104 S. Ct. at

---

⁷ Apparently, trial counsel and/or McCray decided not to pursue an alibi defense, presumably as a matter of trial strategy.  (11/7/03 Tr., Dkt. No. 16-18, Resp.'s Ex. M at 63–64 (marked ZZZ193–94).)

⁸ McCray's post-conviction attorney filed a motion pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), requesting leave to withdraw as counsel for McCray's post-conviction appeal because counsel concluded that the appeal—and Claim 9 in particular—lacked merit.  (4/24/09 Mot., Dkt. No. 16-10, Resp.'s Ex. I ¶ 4.)  The Illinois appellate court considered the *Finley* motion, and McCray's opposition to it, when affirming the circuit court's denial of the post-conviction petition.  (7/24/09 Op., Dkt. No. 16-11, Resp.'s Ex. J at 2.)

⁹ In Pickett's affidavit, she states that when she came home from work around nine or ten p.m. on October 28, 1998, McCray and Gentry were at her home.  (Pickett 9/18/07 Aff. ¶ 4, Dkt. No. 16-8, Resp.'s Ex. G at 48.)  However, she does not account for McCray's whereabouts later that night into the following day, when Hill's murder occurred.  (*Id.*)  Accordingly, Pickett's affidavit does not substantially support an alibi defense.

2068 (adding that a "reasonable probability is a probability sufficient to undermine confidence in the outcome"). That is, he cannot make a substantial showing (as required for a COA) that his counsel's alleged shortcomings prejudiced him under *Strickland*. In light of the above, reasonable jurists could not debate our conclusion that the state court decisions as to Claim 9 were not objectively unreasonable. 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 410, 120 S. Ct. 1495, 1521–22 (2000).

### 4. Claim 10

In his habeas petition, McCray asserted two types of ineffective assistance claims as to his appellate counsel's performance. He first challenged counsel's decision not to bring certain claims in his PLA. (Pet'r Mem. at 72–75.) He also contended that her failure to raise ineffective assistance claims as to trial counsel's performance constituted ineffective assistance of appellate counsel, as did her failure to argue several other points. (*Id.* at 76–80.) We rejected each of these Sixth Amendment claims and now turn to consider the merits of his related request for a COA. *McCray*, 2010 WL 3547983, at *13–14.

As previously held, McCray's first claim of ineffective assistance of appellate counsel cannot stand because he had no right to such counsel when presenting his PLA to the Illinois Supreme Court. *McCray*, 2010 WL 3547983, at *13. It is well-settled that petitioners, like McCray, do not have a constitutional right to counsel when filing a discretionary appeal. *See Coleman,* 501 U.S. at 729, 111 S. Ct. at 2553; *Finley*, 481 U.S. at 555, 107 S. Ct. at 1993; *Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S. Ct. 1300, 1301 (1982); *Anderson*, 227 F.3d at 900–01. And because he had no constitutional right to counsel for purposes of the PLA, he could suffer no constitutional deprivation. *Coleman*, 501 U.S. at 752, 111 S. Ct. at 2566; *see*

*also Bruce v. McCann,* 598 F. Supp. 2d 890, 896–97 (N.D. Ill. 2009). While McCray takes issue with this established legal principle, (COA Applic. at 19), the law is clear and this claim is unfounded.

As to the remaining aspects of Claim 10, McCray argues that appellate counsel was ineffective for failing to raise five issues on appeal. Specifically, McCray contends that appellate counsel should have presented the following issues: (1) trial counsel's ineffectiveness, as described in Claims 7 through 9; (2) his conviction under the wrong and/or invalid statute, as described in Claim 5; (3) his warrantless arrest, as described in Claims 6 and 7; (4) the two mug shots showing police abuse, as described in Claim 8; and (5) evidence of the two alibi witnesses, as described in Claim 9. (Pet'r Mem. at 77–80.) Essentially, he claims that appellate counsel neglected to pursue Claims 5 through 9, as described above, or variations thereof. We earlier addressed McCray's request for a COA as to Claims 5 through 9, however, and rejected all but Claim 8. Indeed, we addressed these claims largely on their merits. (Sections I.B–C & II.B, discussed *supra* at 4–7, 10–15); *see McCray*, 2010 WL 3547983, at *6–8, 11–14.

To the extent that McCray contends appellate counsel should have raised these arguments, in addition to trial counsel's ineffectiveness on the same issues, he cannot succeed. As held earlier, McCray cannot prevail on Claims 5 and 6 as a matter of law, and Claim 7 falls with Claim 6. (Sections I.B–C & II.B.1, discussed *supra* at 4–7, 11.) McCray contends that appellate counsel should have raised Claim 9 and the merits of the underlying claim—concerning the lack of an alibi defense—but these arguments suffer the same fate, for the same reason: McCray has not made a substantial showing that his Sixth Amendment rights were violated because counsels' decisions not to present an alibi defense did not prejudice McCray.

(Section II.B.3, discussed *supra* at 13–15.)  In other words, McCray has not shown that either his trial, or his appeal, might have turned out differently had his lawyers pressed this issue.  *See Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) ("[B]ecause the underlying trial counsel claim is meritless, there is not reasonable probability that the outcome of the appeal would have been different had counsel raised the issue.").

Only Claim 8 remains, as does the related portion of Claim 10.  We hold that reasonable jurists could debate whether appellate counsel's refusal to present the potentially exculpatory photographs and related arguments on appeal, which trial counsel had omitted from the suppression hearing, violated McCray's right to counsel.  Accordingly, we grant the COA as to Claim 10.

## CONCLUSION

For the reasons set forth above, we grant the certificate of appealability as to Claims 8 and 10 only.  McCray's COA request is denied in all other respects.  We also grant McCray leave to proceed with his appeal *in forma pauperis*.  It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: November 19, 2010